## M. N. BLEICH & CO. v. EMMETT.
### (No. 8927.)

Court of Civil Appeals of Texas. Galveston. March 10, 1927.

Appellant's Rehearing Granted April 21, 1927.
Appellee's Rehearing Denied May 26, 1927.

**I. Negligence ⟨⇒32(I)—Owner of premises must provide for invitee such protection as ordinarily prudent man would furnish, but need not protect volunteers.**

Owner or occupant of premises has no duty to protect those going on premises as volunteers or with owner's consent solely for their own private purposes, but one going on premises by invitation of owner is entitled to such protection as man of ordinary care and prudence would use under same circumstances.

**2. Principal and agent ⟨⇒99—Where principal places agent in situation leading ordinary prudent person to believe he is authorized to perform acts usually done in such business, such person is justified in presuming agent has such authority.**

Where principal places agent in such situation that person of ordinary prudence, conversant with business usages, is led to believe that agent has authority to perform acts usually done in such business, such person is justified in presuming that agent has authority to perform such act.

**3. Evidence ⟨⇒20(I)—It is common knowledge that modern city business institutions provide toilets for employees and patrons.**

It is matter of common knowledge that in conduct of modern business institutions in cities, it is usual and customary, if not necessary, for those conducting such institutions to keep toilets for accommodation of employees and patrons.

**4. Principal and agent ⟨⇒99—Agent has authority necessarily implied from nature of employment.**

Agent has not only authority which is expressly given, but such also as is necessarily implied from nature of employment.

**5. Principal and agent ⟨⇒99—Agent has incidental authority to carry out purposes of employment.**

When power is conferred on agent he has by implication such incidental authority as is necessary to carry out purposes of employment.

**6. Principal and agent ⟨⇒99—Principal is liable for agent's conduct within apparent scope of authority.**

Principal is liable for conduct of agent acting within apparent scope of his authority.

**7. Negligence ⟨⇒III(I)—Customer, injured after fall into elevator shaft, cannot recover without allegation of negligence in directing him to go there.**

Customer injured by defendant's elevator after falling into elevator pit on way to toilet cannot recover, in absence of allegation that defendant's agent was negligent in directing him to go there, which negligence was the proximate cause of his injury.

**8. Negligence ⟨⇒44—Storekeeper must light dangerous approaches to places which public is invited to use.**

Proprietor of store invites public to conveniences usually and customarily connected with store for use of customers, and if approach thereto is dangerous, he has duty to see that it is so lighted as to prevent injury from condition not likely to be discovered in absence of such light.

**9. Appeal and error ⟨⇒1178(8)—Judgment though reversed will not be rendered, where amendment would authorize recovery.**

Judgment will not be rendered upon reversal where amendment to petition would entitle plaintiff to recovery and general demurrer was not sustained.

**10. Negligence ⟨⇒I—"Negligence" is failure to exercise ordinary care proximately causing injury.**

In customer's action against storekeeper for injuries suffered after fall in elevator pit, instruction that negligence is failure of any person or employees acting within scope of employment to exercise ordinary care proximately causing injury to another *held* proper.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**II. Negligence ⟨⇒4—"Ordinary care" is care ordinarily prudent persons exercise under similar circumstances.**

In customer's action against storekeeper for injuries suffered after fall in elevator pit, instruction that ordinary care is care and prudence exercised by persons of ordinary care and prudence under same or similar circumstances *held* proper.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary Care.]

**12. Negligence ⟨⇒56(I)—"Proximate cause" is act wanting in ordinary care, aiding in producing injury as direct or existing cause.**

In customer's action against storekeeper for injuries suffered after fall in elevator pit, instruction that proximate cause is act wanting in ordinary care, aiding in producing injury as direct or existing cause, which need not be sole but must be concurring cause, *held* proper.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**13. Negligence ⟨⇒65—"Contributory negligence" is failure to exercise ordinary care.**

In customer's action against storekeeper for injuries suffered after fall in elevator pit, instruction that "contributory negligence" is failure on part of plaintiff to use and exercise ordinary care *held* proper.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

---

⟨⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. Trial ⬦➾350(8)—Refusal of requested special issues calling for answers about which there was no dispute in evidence held not error.**

Refusal of requested special issues *held* not error, where they called for answers to questions about which there was no dispute in evidence.

*On Appellant's Motion for Rehearing.*

**15. Negligence ⬦➾32(3)—Storekeeper not providing toilet held not to have invited customer to use part of store.**

Where storekeeper had not provided toilet, and had no knowledge that part of store was used as place to urinate, there was no invitation, express or implied, for customer to use any part of store for such purpose, so as to make storekeeper liable for injuries sustained in reaching such place, notwithstanding that agent directed customer to go there.

**16. Master and servant ⬦➾302(1)—Storekeeper's employee had no authority to direct customer to part of store to urinate.**

Employee of storekeeper who did not provide toilet had no authority to direct customer to go to any part of store to urinate.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by Joe Emmett against M. N. Bleich & Co. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Frank S. Anderson, of Galveston, for appellant.

Roy Johnson, of Galveston, for appellee.

LANE, J. This suit was instituted by appellee, Joe Emmett, against M. N. Bleich to recover for personal injuries, and for hospital and medical bills, etc., alleged to have been suffered by him by reason of the negligence of Bleich, and for cause of action alleged, substantially, that on the 9th day of July, 1925, defendant was in the business of selling groceries in the city of Galveston, and on said date plaintiff was in the store of defendant for the purpose of making purchases from him; that while in the store and before completing his business transactions with defendant he desired to urinate, and asked the privilege of using defendant's toilet for the purpose stated; that defendant and his employee and agent directed him to the location of the toilet; that the room in which the toilet was located, or place to which he was directed, was very dark and had no light therein; that in said room there was an open space in the floor about two feet deep in which rested a freight elevator when on the floor of the room in which he was directed to enter; that said open space was open and unguarded, and that in passing through said dark room to the place to which he was directed, the elevator was raised and was near the floor above; that he did not see said open space in the floor, and he fell into it upon his hands and knees, and while in such position defendant and his employee caused the elevator to be lowered into said open space and upon his back and body, injuring and damaging him; that such injury and damage was the proximate result of the act of negligence of defendant as follows: (1) In leaving said open space in the floor, into which he fell, open and unguarded; (2) in permitting the room into which he was directed to enter to be kept so dark that persons therein could not see the open space in the floor; and (3) in causing the elevator to be lowered upon his body while he was in said open space.

Pleading further, he alleged as follows:

"That this plaintiff was immediately removed to the hospital in Galveston, and there remained under treatment for a period of 17 days, during which time he suffered great mental and physical pain and anguish. That one of plaintiff's ribs was broken, his head, shoulders bruised and wrenched, and his back severely wrenched and strained, ₐand that he has been unable to perform any work whatever since the date of receiving said injuries and verily believes that he will never again be able to work. That plaintiff was working steadily and was earning approximately the sum of $100 per month, and has lost the value of his earnings since the date of said injuries, and that he will continue to lose his earnings for the balance of his natural life. That he was compelled to employ physicians and will be required to pay his hospital bills, and that he continually suffers much pain and anguish because of said injuries. That in all, plaintiff has been damaged in the sum of $5,000 because of the negligence of the defendant.

"Wherefore plaintiff prays that the defendant be cited to appear and answer this suit, and that upon final trial hereof, that he have judgment against the defendant for his said damages, $5,000, and for general relief with costs of suit."

Defendant answered by general demurrer, general denial, and by special plea denied that the plaintiff was directed to enter the room in which he suffered his injuries by defendant or by any one with authority so to do, either expressly or impliedly, denied that he had any toilet in said room, and alleged that plaintiff was a trespasser and that he entered said room without invitation from him or any agent of his. Defendant also pleaded contributory negligence and alleged that at the time plaintiff entered upon the premises of defendant he knew, or by the exercise of reasonable diligence might have known, that the elevator was in use and was being lowered at the time of his injury, and that had he exercised such diligence he would have avoided the injury complained of.

The cause was tried before a jury upon special issues submitted by the court, after refusing the motion of defendant for an instructed verdict in his favor.

⬦➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The court instructed the jury as to the meaning of the terms "negligence," "ordinary care," "proximate cause," and "contributory negligence" as follows:

"By the term 'negligence' is meant the failure on the part of any person, his servants or employees, acting within the scope of his employment, to exercise ordinary care, as proximately caused injury to another. By the term 'ordinary care' is meant such care and prudence as persons of ordinary care and prudence exercise under the same or similar circumstances. By the term 'proximate cause' is meant such an act wanting in ordinary care, as actually aided in producing the injury, as a direct or existing cause. It need not be the sole cause, but it must be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances. By the term 'contributory negligence,' as applied to the plaintiff, is meant a failure on his part to use and exercise ordinary care."

The special issues submitted were as follows:

"No. 1. Did the employee of the defendant direct the plaintiff to go to the place where the plaintiff was injured?

"No. 2. Was the place where plaintiff was injured so dark that same was unsafe for defendant's customers?

"If you have answered special issue No. 2 in the affirmative, that is, yes, but not otherwise, then you will answer:

"No. 3. Did such condition of darkness constitute negligence?

"If you have answered special issue No. 3 in the affirmative, that is, yes, but not otherwise, then you will answer:

"No. 4. Was such negligence the proximate cause of plaintiff's injuries, if any?

"No. 5. Did the defendant fail to provide sufficient guards about the elevator hole or pit to protect persons from falling therein?

"If you have answered the foregoing interrogatory in the affirmative, that is, yes, but not otherwise, then you will answer:

"No. 6. Was such failure, if any, negligence?

"If you have answered special issue No. 6 in the affirmative, that is, yes, but not otherwise, then you will answer:

"No. 7. Was such negligence the proximate cause of plaintiff's injuries, if any?

"No. 8. Did the employees of the defendant lower or cause to be lowered the elevator upon the plaintiff without giving him warning?

"If you have answered special issue No. 8 in the affirmative, that is, yes, but not otherwise, then you will answer:

"No. 9. Was such act of the defendant negligence?

"If you have answered special issue No. 9 in the affirmative, that is, yes, but not otherwise, then you will answer:

"No. 10. Was such negligence the proximate cause of the injuries, if any, by plaintiff sustained?

"No. 11. Could the plaintiff, by the exercise of ordinary care, have observed the elevator pit and avoided falling therein?

"No. 12. What amount of damage do you find from the evidence has the plaintiff sustained?"

Following such submission, the court instructed the jury as follows:

"In this connection you are instructed that you will consider the various grounds of damage set out in plaintiff's petition so far as may be shown by the evidence; and in determining the question of future damage you will look to the evidence to ascertain whether such damage is reasonably probable, and, if you find that it is, you will assess an amount therefor no greater than its present value, if paid in cash."

Issues Nos. 1 to 10, inclusive, were answered "yes"; No. 11 "no"; and No. 12 "$1,660."

Upon the verdict of the jury and the evidence the court rendered judgment for plaintiff for the sum of $1,660. From such judgment the defendant has appealed.

By his first, second, third, fourth, and fifth propositions appellant substantially insists that the court erred in not instructing a verdict in his favor and in submitting to the jury special issues Nos. 1 to 10, inclusive, hereinbefore set out, whereby the jury were instructed to find: (1) Whether or not an employee of appellant directed appellee to go to the place where he was injured; (2) whether or not such place was so dark that same was unsafe for appellant's customers; (3) whether or not such condition of darkness constituted negligence and was the proximate cause of appellee's injury; (4) whether or not appellant failed to provide sufficient guards about the elevator pit to protect persons from falling into the same; (5) whether or not such failure, if any, was negligence, and, if so, was it the proximate cause of appellee's injury; (6) whether or not the employees of appellant lowered, or caused to be lowered, the elevator upon appellee without giving him warning, and, if so, was such act negligence and the proximate cause of appellee's injury, in that there was no evidence warranting the submission of such issues.

The contention of appellant cannot be wholly sustained. That there was sufficient evidence to sustain findings that the room into which appellee entered at the time of his injury was dark and unlighted, that there was an open space or pit in the floor of the room, that said pit was unguarded and unprotected, that appellee fell into such pit on his hands and knees, that while in such pit an elevator was lowered by appellant's employees upon appellee's body, inflicting upon him, in part at least, the injuries complained of, cannot, we think, be reasonably questioned. But appellant contends that the undisputed evidence shows that if one of his employees directed appellee to enter the room in which he was injured for the purpose of urinating, such employee had neither express nor implied authority to so direct appellee; that appellee entered said room without invitation from appellant, or any one by him

authorized to extend such invitation, for his own purposes and not in furtherance of appellant's business in any manner whatever, and therefore appellee was a trespasser on said premises, a mere licensee, to whom appellant owed no duty other than not to wantonly injure him.

It is shown that appellant was engaged in the sale of groceries and feed stuff in the city of Galveston; that the groceries were kept in one compartment and the feed stuffs, such as cottonseed meal, hay, etc., in another; that a partition wall divided the two compartments so that there was no place of entrance to one from the other; both fronted on Market street in said city, and each was entered through a door on said street; that in the rear of the grocery compartment appellant had two or more toilets for the use of the owner, his employees and customers, but he had no toilet in the feed compartment and did not know that any one had ever made use of the rear part of such compartment as a substitute for a toilet, and that had he so known he would have forbidden such use. At a distance of 30 feet from the front door inside the feed room there was situated an office, and near this office certain scales for weighing the feed, the office being used by appellant's employees in charge of the feed room. A platform was constructed in the center of the feed room extending from the office and scales 70 feet to the rear wall of the room. On each side of said platform' there was a passage about 8 feet wide separating the platform from racks built on the east and west sides of said room. Upon such racks hay and other feed stuffs were stacked, practically reaching to the ceiling. In the southwest corner of the room, at the rear thereof, there was an elevator used for hoisting and lowering merchandise, which when lowered rested in a pit on the lower floor. No toilet was actually maintained in the feed room', and there was nothing in the way of signs to indicate that a toilet was in said room.

On the date of the plaintiff's alleged injury, in company with his son, he drove his truck to the front of the feed store on Market street and ordered some cottonseed meal; instructions were given to Austin Johnson, an employee of the defendant, to get three sacks of cottonseed meal and place them on the plaintiff's truck, which the defendant's employee did.

Appellee testified, substantially, that the colored man, Austin Johnson, got the cottonseed meal and put it on the house truck on the inside of the store and carried it out and put it on appellee's truck; that at that time he had to urinate and he asked Johnson where the toilet was situated; that Johnson told him that if he wanted to urinate to go to the dark corner behind the hay; that that was the place used for such pur-

pose; that the place to which he was directed was dark and that in going to such place he fell in the elevator pit and before he could get out the elevator was lowered upon him; that at the time he went to the dark corner he had not settled for the cottonseed meal. He testified that the appellant told Austin Johnson to deliver the cottonseed meal; that he knew Johnson and he always waited on him, appellee, when dealing with appellant, which had extended over two years.

Sam Emmett, son of appellee, testified that Johnson pointed out the place where appellee was to go to urinate; that after appellee got hurt he gave the witness the money to pay for the cottonseed meal.

Joe Emmett testified that he heard Johnson state that when appellee told him that he wanted to urinate he, Johnson, sent him back to the place where he got hurt, but he did not think he would get in the hole.

Carlo Pucci testified that he had known appellant for about ten years and traded with him; that during such time he had been in the back part of the feed store where the elevator was and would sometimes go where the elevator was to urinate.

Under the facts shown we are not prepared to agree with the contention of appellant that Johnson did not have implied authority to direct appellee to a place to urinate. We are of opinion that the facts show that Johnson did have apparent authority. Neither can we agree with appellant's contention that the going of appellee to the place where he was hurt was wholly disconnected with the business of appellant.

[1] That the owner or occupant of premises is under no duty to protect those who go upon the premises as volunteers, or merely with the consent of the owner or occupant solely for their own private purposes, is too well settled to require citation of authorities. Such persons are mere licensees to whom the owner owes no duty except not to wantonly injure them, but one who goes upon the premises by invitation of the owner is entitled to such protection by the owner against dangers attached to such premises as a man of ordinary care and prudence would use under the same or similar circumstances, and a failure on the part of the owner to use such care, in the absence of contributory negligence on the part of a party suffering injury by reason of said danger, would render such owner liable to the injured party for such damages as he might suffer by reason of such injury.

[2] It is also well settled that where a principal has placed an agent or servant in such situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is led to believe that such agent has authority to perform acts usually done in such business, such person is justified in presuming that such agent or servant has authority to perform

an act usually and customarily performed by an agent or servant of such business.

[3] It is a matter of common knowledge that in the conduct of modern business institutions in cities, it is usual and customary, if not necessary, for those conducting such institutions to keep toilets for the accommodation of its employees and patrons, so that such persons may use them when so required by a call of nature, and that in many large business institutions restrooms are established for the use of patrons. In such cases, if a clerk or other employee or agent of such business were to, when requested so to do, direct a patron of the business to a place where such toilet or restroom could be found, and such patron is injured in going to such place by reason of some dangerous defective condition of the path leading to such place, such condition being known to the owner, or by reasonable care should have been so known, and which was not known, nor by the exercise of ordinary care would not have been discovered by the injured party, the owner would, in our opinion, be liable for such damages as were the proximate result of the act of the owner in maintaining the dangerous condition of the path to the toilet. In such case the owner cannot defend upon the ground that his employee had no authority to give the directions mentioned, and, if he had, that the directions given were solely for the accommodation of the patron and not in furtherance of the owner's business. An agent or employee has implied authority to do all things which are reasonably required of him to effectuate the purpose for which he is employed. St. Louis, I. M. & S. Ry. Co. v. Jones, 96 Ark. 558, 132 S. W. 636, 37 L. R. A. (N. S.) 418.

[4] An agent has not only the authority which is expressly given, but such also as is necessarily implied from the nature of the employment. Daniel v. Atlantic Coast Line Ry. Co., 136 N. C. 517, 48 S. E. 816, 67 L. R. A. 455, 1 Ann. Cas. 718.

[5] When a power is conferred upon an agent he has by implication such incidental authority as is necessary to carry out the purposes of his employment. Spengler v. Sonnenberg, 88 Ohio St. 192, 102 N. E. 737, 52 L. R. A. (N. S.) 510, Ann. Cas. 1914D, 1083; So. Ry. Co. v. James, 118 Ga. 340, 45 S. E. 303, 63 L. R. A. 257.

[6] A principal is liable for the conduct of his agent acting within the apparent scope of his authority. Smith v. Railway Co., 88 S. C. 421, 70 S. E. 1057, 34 L. R. A. (N. S.) 708. The principal is liable where the agent acts within the apparent scope of his authority, provided a liability would attach to such principal if he was in the place of the agent. Nicholson v. Dover, 145 N. C. 18, 58 S. E. 444, 13 L. R. A. (N. S.) 167.

An agent may be presumed to have authority to do those things which are, according to custom, usually required of those similarly employed. A principal in appointing an agent is regarded as saying to the public that the agent has authority to transact his employment in the usual and customary way. Wheeler v. McGuire, 86 Ala. 398, 5 So. 190, 2 L. R. A. 808; State v. Kittelle, 110 N. C. 560, 15 S. E. 103, 15 L. R. A. 694, 28 Am. St. Rep. 698.

[7] We are now brought to a consideration of a more troublesome question. Appellant complains also of the refusal of the court to instruct a verdict in his favor, and in submitting the special issues 1 to 10, inclusive, insisting that the court erred in such refusal and submission, in that those matters alleged by the plaintiff as constituting acts of negligence on the part of the defendant are, to wit: (1) In leaving an open space in the floor unguarded; (2) in permitting said room to be kept dark; and (3) in causing the elevator to be lowered while he was in the elevator pit, and in that it was not shown that defendant owed any duty to the plaintiff to abstain from keeping and operating an elevator in the manner his was kept and operated, or to keep the place about said elevator lighted.

Evidently the fact that appellant in constructing his elevator left an open space into which it might rest unguarded was not, as to appellee, prima facie negligence, and that if negligence of which appellee could complain, his right to complain arose only by reason of the act of appellant's agent in directing him to go in and about its location. This being true, can appellee recover in the absence of an allegation that such direction on the part of such agent was negligence and the proximate cause of his injury? Appellee made no such plea.

[8] It being shown by the undisputed evidence that the elevator and the pit into which it rested were constructed to be used and were used by appellant in the conduct of his private business in that part of his establishment to which the public were not invited and not expected to use without invitation, appellee could rightfully complain only of the negligent act of appellant's agent, who, we have found under the facts shown, had apparent authority to direct customers of appellant to the toilet, in directing him upon his request for the use of the toilet to the place where the open pit was situated. And since appellee has not pleaded such act as an act of negligence proximately causing his injury, he cannot recover on proof alone of such negligence. We therefore conclude that the judgment in his favor must be reversed. We do not think, however, that we should here render judgment for appellant, as we think the facts proven, if supported by proper pleadings, would support a recovery for appellee. A proprietor of a store, such as appellant's, invites the public to his store and to those conveniences usually and customarily connected with the same for the use of

its customers, and if he directs such persons to a dangerous place, as such place of convenience, he owes to such person the duty to see that the approach to said place is so lighted at the time as to prevent such person from injury by some dangerous condition. of such approach which would not likely be discovered by such person in the absence of such light. Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1, 22 L. R. A. (N. S.) 1045, 17 Ann. Cas. 576, and authorities therein cited.

[9] The general demurrer to the plaintiff's petition was not sustained, and had it been the plaintiff would have probably amended so as to entitle him to a recovery. Under such circumstances, we think he should be given an opportunity to amend his petition, if he so desires.

[10-13] We have considered the appellant's complaints of the instructions of the court defining "negligence," "ordinary care," "proximate cause," and "contributory negligence," and have reached the conclusion that such instructions were substantially correct. We therefore overrule the complaints.

[14] We also overrule the appellant's complaints of the refusal of the court to submit to the jury certain special issues requested by him. We think the requested issues called for answers to questions about which there was no dispute in the evidence.

For the reasons pointed out, the judgment is reversed and the cause remanded.

Chief Justice PLEASANTS dissents from our conclusion that the facts proven would, if properly pleaded, constitute a cause of action against appellant, and insists that such facts, though pleaded and proven, would not support a judgment for appellee, and therefore the judgment should be reversed and judgment here rendered for appellant.

Reversed and remanded.

### On Appellant's Motion for Rehearing.

[15] The majority of this court held that the evidence showed that Austin Johnson, an employee of appellant, had implied authority to direct appellee to use the rear of the room, where appellant kept his feed stuff, as a urinal; that as Johnson had such apparent authority, and having so directed appellee, appellee in attempting to so use such place became an invitee of appellant, to whom appellant owed the duty to see that the approach to such place was so lighted at the time of such invitation as to protect such invitee from injury by some dangerous condition of such approach which would not reasonably be discovered by the invitee in the absence of such light. Upon such holding alone we refused to sustain appellant's contention that the court erroneously refused to instruct a verdict in his behalf.

Appellant has filed his motion for rehearing, and upon a more thorough examination of the authorities we have reached the conclusion that we erred in the above-mentioned holding and that we should have sustained appellant's contention that under the facts shown, which seem to have been fully developed, he should have had judgment in his favor by the trial court, and, being so entitled, this court should reverse the judgment of the trial court and here render judgment for him.

The undisputed evidence shows that appellant had not provided a toilet in the rear of his feed compartment for use by any one; that he had not authorized any one to use such place as a toilet or place to urinate; and that he had no knowledge that such place had ever been so used.

Under such circumstances there was, we now think, no invitation, either expressed or implied, by appellant extended to appellee to use any part of the feed compartment as a place to urinate.

In I. & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902, in an opinion by our Supreme Court, it is said:

"To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary of his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful, and to the injury of another, the master is liable, although he may have expressly forbidden the particular act. But whether the act in question can be implied from the general authority conferred upon the servant must, in general, depend upon the nature of the service he is engaged to perform, and the circumstances of the particular case."

[16] As shown by the facts stated in our original opinion, Johnson was employed as a laborer in the feed store; his duties were to deliver merchandise sold by appellant to his customers and to do general labor about appellant's store. As already said, appellant did not maintain a toilet in the feed store for use by any one, and there was nothing in the nature of the business conducted, or any signs posted, indicating any such place; appellant held out no invitation, express or implied, for his customers to use one therein, and apparent or implied authority in Johnson to direct persons to a toilet did not exist; it was certainly not in furtherance of appellant's business or for the accomplishment of the object for which Johnson was employed, and no general authority conferred by appellant upon his employee can be implied from the fact that no toilet was maintained in the store. Keeran v. Spurgeon Mercantile Co., 194 Iowa, 1240, 191 N. W. 99, 27 A. L. R. 597;

Corbett v. Spanos et al., 37 Cal. App. 200, 173 P. 769.

Having reached the conclusions above expressed upon consideration of appellant's motion, our former judgment reversing the judgment of the trial court and remanding the cause is set aside, and, for the reasons above expressed, the judgment is reversed and judgment is here rendered for appellant.