**VENEZIE v. SALLES et al.** *

No. 16673.

Court of Appeal of Louisiana. Orleans.

Oct. 18, 1937.

George P. Nosacka, and Clarence E. Strauch, both of New Orleans, for appellant.

John J. Conners and Manuel I. Fisher, both of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for damages in the amount of $2,705 alleged to be due plaintiff for physical injuries resulting from an accident which occurred on the 3d day of March, 1935, when plaintiff fell into a manhole on the premises, No. 140 Dauphine street, owned by the Mercier Realty & Investment Company, and operated by George Salles as a restaurant and barroom. The suit was originally brought against both the owner and occupant of the premises, but the Mercier Realty & Investment Company filed an exception of no cause of action which was maintained and the suit dismissed as to it. Antonio Venezie, the plaintiff, acquiesced in the judgment of dismissal and the suit was tried against the defendant Salles alone with the result that judgment was rendered in plaintiff's favor for $605. Defendant has appealed, and plaintiff has answered the appeal asking that the judgment be increased to the amount prayed for.

George Salles operated a small restaurant and bar known as the "Palace Sandwich Shop." Antonio Venezie was a good customer of Salles and on March 3, 1935, at about 8:30 a.m. entered the Palace Sandwich Shop for the purpose of eating or drinking, and while there walked towards the rear of the premises with the intention of using the toilet. He fell into an open manhole which was directly in his path and which had been left uncovered by an employee of the defendant. It is alleged that the manhole is in a dark passageway insufficiently lighted, and that on this account, as well as because of the carelessness of defendant's employee in leaving the cover off, the defendant was guilty of negligence in that he failed to keep the premises safe for the use of his customers.

The case is defended upon the ground that the toilet in question is not a public

*Rehearing denied Nov. 2, 1937.

but a private one, maintained for the exclusive use of defendant's employees and not for his customers who were not permitted to use it except upon special occasions and with express permission; that in order to get to the toilet it is necessary to go behind the service counter, through an aisle where the kitchen sinks are located and towards the rear of the defendant's premises, thus invading the privacy of defendant's business. There is also a contention that the plaintiff was guilty of contributory negligence though that defense is not specially pleaded. It is said that there is a sixty watt light over the manhole which is continuously burning night and day, and it is argued that there was no reason why plaintiff could not have seen the open manhole and have avoided it.

The evidence indicates that defendant's business occupies a limited space and that the toilet is situated at the end of a narrow passageway at one end of the bar. The manhole, which is nineteen inches in diameter, is situated near the center of the passage and about one-third the distance from the entrance to the toilet. It is used for the disposal of refuse from the kitchen, the sinks, and the tables. The toilet was unquestionably used by the employees of defendant, both white and black, male and female, because it is the only one on the premises. It was also used by the customers of the defendant and had been frequently used by the plaintiff in this case on former occasions, though he testified that the presence of the manhole was unknown to him prior to the accident. One of the negro employees of the defendant testified that he removed the cover from the manhole on the day of the accident and failed to replace it before he left defendant's place of business on an errand of his employer, the accident occurring during his absence.

Defendant relies upon the contention that the plaintiff was a licensee to whom he owed no greater duty than to refrain from wantonly injuring him. We are referred to Vargas v. Blue Seal Bottling Works, 12 La. App. 652, 126 So. 707, a case decided by this court, in which it was held that a salesman who had entered the premises of a bottling company for the purpose of selling a bottling machine and who remained to witness the operation of a competitor's machine with the permission of the bottling company, and who was injured by the explosion of a bottle, was a licensee at the time of his injury though he occupied the status of an invitee at the beginning of his visit.

We are also referred to a number of cases from other jurisdictions: Herzog v. Hemphill, 7 Cal.App. 116, 93 P. 899; Liveright v. Max Lifsitz Furniture Company, 117 N.J.L. 243, 187 A. 583; Standard Oil Company of Indiana v. Henninger, 100 Ind. App. 674, 196 N.E. 706; Collins v. Sprague's Benson Pharmacy, 124 Neb. 210, 245 N.W. 602.

The Vargas Case is easily distinguishable from the case at bar. Vargas, at the time of his injury, was engaged in observing the operation of a machine manufactured by a competitor and, consequently, he was solely occupied in the gratification of his own interest or curiosity. There was no mutuality of interest. C. J. vol. 37, verbo License, p. 161.

The other cases cited are not so easily disposed of. For example, in the Herzog Case, where the proprietor of a tamale stand in San Francisco permitted one of his customers to use the toilet attached to his place of business, it was held that he was not liable for injuries received by the customer due to the unsafe condition of the approach to the toilet, because the customer was a licensee and not an invitee; and in the Liveright Case the owner of a furniture store was held not liable to a furniture salesman for injuries "received by salesman when attempting to enter unlighted toilet after having used furniture store's telephone to make personal call, in absence of showing of willful injury, notwithstanding that salesman originally entered store to sell furniture and make purchase, where neither telephone nor toilet was maintained for accommodation of store's customers." Syllabus. In a word, these cases hold that, where a toilet is maintained for the use of the employees of a proprietor and not for his customers, its occasional use by a customer does not involve responsibility for accidental injuries due to its unsafe condition or the approach thereto.

In Corpus Juris, volume 45, verbo Negligence, page 835, we read: "A customer of a store or place of business retains the status of an invitee while going to, returning from, or making use of, a toilet, which is maintained for the use of customers, or which customers are ordinarily permitted to use, or, it has been held, to

which he is directed or permitted to go by a person in authority in response to his request. But the proprietor of a store or place of business owes to customers no duty with respect to the safety of a toilet which is maintained solely for the use of employees, or which a customer is permitted to visit merely as an accommodation on a particular occasion, and even frequent permissive use by customers of a toilet not maintained for customers has been held not to give a customer who is permitted to use it the status of an invitee."

We have been referred to no case in this jurisdiction exactly in point. There are many which hold that the proprietor of a store or restaurant must keep his floors and passageways in a safe condition for the use of his customers (Ransom v. Kreeger Store, Inc., et al. [La.App.] 158 So. 600; Redon et ux. v. Standard Acc. Ins. Co. [La.App.] 161 So. 762), but none involving the joint use of a toilet by customers and employees.

▮ The question of the character of the defendant's obligation towards the plaintiff in this case is not free from difficulty. As we have said, the toilet was unquestionably intended primarily for the use of defendant's employees. Its location was relatively inaccessible to the customers and its approach was through a narrow passageway, through a part of the premises used by the proprietor as a kitchen and, therefore, not so situated as would suggest its having been designed for public use, but there was no other toilet on the premises. If the toilet had been used exclusively by defendant's employees and not as an adjunct of defendant's business, the weight of authority would be to the effect that defendant would not be liable. But it might be, as was said in Bleich & Co. v. Emmett (Tex.Civ.App.) 295 S.W. 223, 227, that "it is a matter of common knowledge that in the conduct of modern business institutions in cities, it is usual and customary, if not necessary, for those conducting such institutions to keep toilets for the accommodation of its employees and patrons, so that such persons may use them," and we might add that the proprietor of a modern barroom and restaurant who maintains only one toilet, used indiscriminatingly by his employees and his customers, would be held to the same responsibility as a proprietor offering greater facilities and more conveniences to his customers by maintaining a separate toilet for their exclusive use. However, we need not go that far, in this case, because from the evidence in the record it appears that the approach to the toilet had been rendered more hazardous on the date of the accident by the removal of the cover of the manhole by an employee than it has ever been before during the long period of time that it is shown that the plaintiff, in this case, had been accustomed to using the defendant's toilet. Under the particular facts of this case, therefore, it is immaterial whether the plaintiff was an invitee or licensee because, if we assume that he was the latter, an assumption most favorable to the defendant, the exception to the rule concerning the obligation of the owner or occupant of premises who permits the public use thereof, to the effect that where such premises have been made more hazardous than formerly, notice should have been given of its altered and more dangerous condition. See Buillard v. New Orleans Terminal Company, 166 So. 640, 644, where this court, after citing numerous authorities upon the subject, held that a workman who had been permitted to use a railroad drawbridge as a passageway was a licensee, but that, when such workman was injured due to the raising of the bridge without notice, the railroad was liable for the resulting injury to the workman because "it could not alter the condition of the premises which were being used by the plaintiff so as to create a greater hazard, without first giving to the plaintiff notice of such alteration or change." It follows that in this case the failure of the defendant to warn plaintiff of the altered and more hazardous condition of the passageway leading to the toilet, which he had frequently used and over which he had frequently passed in safety, was an act of negligence for which the defendant is responsible whether he be considered as an invitee or a licensee.

As we have said, the plea of contributory negligence is not formally presented, but in any event we are not satisfied that there was sufficient light in the passageway to support such a plea if it may be considered under the pleadings.

We conclude that defendant is liable.

▮ Venezie was employed as a messenger by the Railway Express Company. His employment was not steady or continuous, but was from time to time when the illness or absence of regular

employees created a demand for his services. At such times he would be paid for the trip various sums from $19 to $20, depending upon the length of time consumed. He was obliged to refuse a number of opportunities to replace other employees and thus lost quite a little money which he might have earned, perhaps, as much as he claims $190. His injuries, however, were not severe though painful and slow to recover because of the fact that abrasions of the skin covering the tibia or shin bone, such as plaintiff suffered, heal more slowly than at other points. He should recover his doctor bill of $15 which apparently was not allowed below. With this slight exception we are not disposed to alter the award of the trial court.

For the reasons assigned the judgment appealed from is amended by increasing the amount awarded from $605 to $620. In all other respects it is affirmed.

Amended and affirmed.