[Civ. No. 7324.   Third Dist.   Mar. 24, 1947.]

EDWARD L. DEMMER, Appellant, v. CITY OF EUREKA et al., Respondents.

Michael McHugh for Appellant.

Kenneth D. Sevier, in pro. per. and Harry W. Falk for Respondents.

PEEK, J.—Plaintiff appeals from the judgments entered in favor of both defendants upon the failure of the plaintiff to amend his complaint within the time allowed after the trial court·sustained general and special demurrers filed by each of the defendants. In view of the holding here that the general demurrers were properly sustained, it is unnecessary to consider the questions raised with respect to the special demurrers.

The salient points set forth by the appellant in his complaint, which is in three counts, are substantially as follows: In 1934 the defendant city of Eureka graded and improved Buhne Street in that city by constructing an embankment or fill across a natural ravine, which for a long period of time had drained the property along its course including that of defendant Sevier. This fill consisted of loose earth, clay, sand, debris, and refuse logs. No retaining wall or other device was provided to prevent the embankment from sliding or washing into the ravine. In the construction thereof the city installed a metal pipe 18 inches in diameter and 80 feet long at the bottom of the ravine and across Buhne Street for the outlet of water through the ravine. This pipe was, at times, inadequate to carry off the water flowing in the creek, and as a result thereof such water accumulated on the south side of the embankment, causing the soil to gradually wash down into the ravine. Owing to this condition the pipe became completely closed during January, 1945, muddy water was impounded to a depth of 30 feet, and the accumulation of water thus formed caused the greater part of the fill on the south side of Buhne

Street to cave in and slide into the ravine. The deep pond thus created extended over a part of Buhne Street and over the property of the defendant Sevier a distance of some 50 feet. Refuse logs floated on this surface, one of which was 10 feet long and 3 feet in diameter, and were presumably a part of the material used in the construction of the fill. It is alleged that the existence of this condition was known or should have been known to each of the defendants.

On April 17, 1945, plaintiff's son, Edward Lorenz Demmer, deceased, approximately 10 years of age, his brother, about 9 years, and a youthful companion of approximately the same age, were walking on Buhne Street. Upon arriving at the point in question they were attracted by the pond and the log floating therein, climbed on the log and paddled it out beyond the limits of Buhne Street and over the property of the defendant Sevier, where Edward fell off and was drowned. Plaintiff brought this action under section 376 of the Code of Civil Procedure to recover damages for the death of his minor child.

Plaintiff's first cause of action, which is against the city, is upon the theory that the embankment was improperly planned, constructed and maintained, and as a result thereof a public nuisance was thereby created by the defendant city.

The second cause of action is likewise solely against the city, and is based upon its alleged negligence in failing to take any measures to remedy the dangerous condition or to protect children who were using the log as a raft in the pond with the knowledge of the city.

The third cause of action is against the individual defendant upon the theory of negligence substantially as that set forth in the second cause of action against the city.

█ It is a well settled rule of law under the decisions of the courts of this state, and one which is no longer open to question, that a pond or pool of water is not *per se* an "attractive nuisance" which will subject the owner of the land upon which it is located to liability in the event that a child trespassing upon the property is attracted and lured to play therein and is injured or drowned. (*Peters* v. *Bowman,* 115 Cal. 345 [47 P. 113, 598, 56 Am.St.Rep. 106] ; *Polk* v. *Laurel Hill Cemetery Ass'n,* 37 Cal.App. 624 [174 P. 414] ; *Beeson* v. *City of Los Angeles,* 115 Cal.App. 122 [300 P. 993] ; *Melendez* v. *City of Los Angeles,* 8 Cal.2d 741 [68 P.2d 971] ; *King* v. *Simons Brick Co.,* 52 Cal.App.2d 586 [126 P.2d 627].)

The appellant concedes that such is the established law in California but attempts to predicate liability upon the ground that the boy was not a trespasser while within the limits of Buhne Street where he climbed on the log nor while over the property of the defendant Sevier to which he had paddled, and where he fell off and was drowned. Therefore, he contends, since the boy was not a trespasser, the attractive nuisance doctrine is inapplicable, and the above cited cases are not in point.

The theory advanced is that the child while lawfully using the highway was attracted to the pond, and that he retained his legal status as a user of the highway while so digressing. To support this contention appellant relies upon the case of *Kataoka* v. *May Dept. Stores Co.,* 60 Cal.App.2d 177 [140 P.2d 467], and *Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356]. In the Kataoka case a child of four caught his hand in an escalator while in the company of his mother who was shopping in the defendant's store. In the Crane case a child of three under similar circumstances was held to be a business visitor at the time she placed her finger in a coffee grinder situated in an aisle of defendant's store.

The cases cited are clearly distinguishable. Here, the deceased did not place his hand or other part of his body into a dangerous contrivance while a business invitee upon the premises of the defendants. On the contrary, he left the clear portion of the highway upon which he was walking and proceeded to use the pond as a playground.

It cannot be said that while on such venture he was either an "invitee" or "business visitor." At most he was a mere "licensee." One who, while lawfully upon the property of another or upon public property as an "invitee," leaves that portion of the property upon which he has been invited, or uses the property upon a venture in his own interests and not within the scope of his invitation, or purpose for which the property was reasonably intended, loses his status as an "invitee" and becomes a trespasser or mere "licensee." (*Polk* v. *Laurel Hill Cemetery Ass'n, supra; Lindholm* v. *Northwestern Pac. R. R. Co.,* 79 Cal.App. 34 [248 P. 1033]; *Bush* v. *Weed Lumber Co.,* 63 Cal.App 426 [218 P. 618]; *Kirkpatrick* v. *Damianakes,* 15 Cal.App.2d 446 [59 P.2d 556]; *Howard* v. *City of Fresno,* 22 Cal.App.2d 41 [70 P.2d 502]; *Koppelman* v. *Ambassador Hotel Co.,* 35 Cal.App.2d 537 [96 P.2d 196].)

The distinction between an invitee and a licensee is

clearly stated in *Bush* v. *Weed Lumber Co., supra,* at page 432 : "An invitation to use the premises of another is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using them." If it be a fact that here the child was attracted or lured into the premises by the pond, such fact does not give him a higher position than that of a trespasser or licensee.

One who enters the premises of another as a trespasser or mere licensee does so at his own risk, and the owner owes him no duty to keep the premises in a safe condition. His only duty is to abstain from wanton or wilful injury. (*Giannini* v. *Campodonico,* 176 Cal. 548 [169 P. 80] ; *Schmidt* v. *Bauer,* 80 Cal. 565 [22 P. 256, 5 L.R.A. 580] ; *Herzog* v. *Hemphill,* 7 Cal.App. 116 [93 P. 899] ; *Brown* v. *Pepperdine,* 53 Cal.App. 334 [200 P. 36] ; *Roberts* v. *Pacific Gas & Electric Co.,* 102 Cal.App. 422 [283 P. 353] ; *Kirkpatrick* v. *Damianakes, supra; Koppelman* v. *Ambassador Hotel Co., supra.*)

It is said that a licensee receives the use of the land as a gift, and has no right to demand that the premises be made safe for his use. The owner of the land is under no duty to give a warning or remedy conditions which may be dangerous and which are obvious to the person so using the property. With respect to the use of a pool or pond even by children of tender age, the courts of this state have held that the danger of drowning which such use entails is an obvious and open danger—one which the user assumes. In *Polk* v. *Laurel Hill Cemetery Ass'n, supra,* at page 634, the court makes the following observation :

"A pond of water, it may be conceded, is always attractive to youngsters, but the dangers connected with and inherent in a lake or pond of water, natural or artificial, are obvious to everybody—even to a child old enough to be permitted by its parents to go about and play unattended upon the streets or in the public parks. It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death."

Equally without merit is the contention that the city is liable under the Public Liability Act of 1923 as amended (Stats. 1923, p. 675; Stats. 1943, ch. 134; 2 Deering's Gen. Laws, Act 5619.) This act as it now stands and as it existed

at the time of the unfortunate death of the Demmer boy, reads as follows:

"§ 2. *Liability of counties, etc.* Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways . . . in all cases where the governing or managing board of such county, municipality . . . , officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, . . . and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."

In *Beeson* v. *City of Los Angeles, supra,* the plaintiff likewise attempted to predicate liability upon the Public Liability Act. After citing numerous cases construing the act the court states at page 132:

"In all of the cases thus far decided the injured party was using the street in which he was injured, or the property which caused the injury, in the usual and ordinary manner in which it was contemplated that the street or property would be used. We are of the opinion that in passing and adopting section two of the act approved June 13, 1923, the legislature intended to limit the liability of the city for damages resulting from defective streets, works or property to damages suffered in the ordinary, usual and customary use thereof."

Applying the rule stated in the Beeson case to the facts alleged in plaintiff's complaint it is readily apparent that said complaint is insufficient. The factual situation so presented is not comparable to that found in that class of cases where recovery is allowed, i. e., where an individual while lawfully using the highway in a customary manner strikes an obstruction or falls into an excavation thereon or so near as to present a peril to any one so using it. Here the plaintiff's son was not fatally injured while using Buhne Street in a customary manner but rather he had left the improved portion of the street where he and his brother had been walking, climbed on a log and, using it as a plaything, paddled out on the pond where he fell off and was drowned.

While it is true, as plaintiff lastly contends, that certain jurisdictions have held liability to exist where, in addition to the creation of the pond itself, there has been added further element such as a floating object (see 40 A.L.R. 488), such is not the rule in this state. Our courts have consistently followed the rule laid down in the Beeson case (*Rodkey* v. *City of Escondido,* 8 Cal.2d 685 [67 P.2d 1053]; *George* v. *City of Los Angeles,* 11 Cal.2d 303 [79 P.2d 723]; *Woodman* v. *Hemet Union High School Dist.,* 136 Cal.App. 544 [29 P.2d 257]; *Howard* v. *City of Fresno,* 22 Cal.App.2d 41 [70 P.2d 502]), and have cited it with approval in cases presenting factual situations similar to those of the instant case. (*Melendez* v. *City of Los Angeles,* 8 Cal.2d 741, 747 [68 P.2d 971].)

Particularly pertinent to this phase of the controversy is the concluding statement in the case last cited. There the court in affirming the order of the trial court sustaining a demurrer to a complaint which alleged the drowning of a small boy as the result of the use of an object floating on a pond created by the caving in of the sides of a storm drain and the clogging up of a conduit, stated: "The rule announced and applied in the Beeson case should govern the disposition hereof." It therefore follows that the order of the trial court herein sustaining defendants' demurrers likewise was proper, and the judgments entered accordingly should be affirmed.

The judgments are affirmed.

Adams, P. J., and Schottky, J., pro tem., concurred.